Slip Op. 25-87

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

### Consol. Ct. No. 20-03914

AMERICAN PACIFIC PLYWOOD, INC.,
INTERGLOBAL FOREST LLC, and
U.S. GLOBAL FOREST, INC.,

*Plaintiffs*,

and

LB WOOD CAMBODIA CO., LTD., and
CAMBODIAN HAPPY HOME WOOD
PRODUCTS CO, LTD.,

*Plaintiff-Intervenors*,

v.

UNITED STATES,

*Defendant*,

and

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

*Defendant-Intervenor*.

### Before: M. Miller Baker, Judge

## OPINION

[Sustaining Customs's redetermination that importers
evaded antidumping and countervailing duties.]

Dated: July 9, 2025

**Consol. Ct. No. 20-03914**                                **Page 2**

*Thomas H. Cadden* and *Ivan U. Cisneros*, Cadden & Fuller LLP, Irvine, CA, on the comments for Plaintiff InterGlobal Forest, LLC.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Claudia Burke*, Deputy Director; *Justin R. Miller*, Attorney-in-Charge, International Trade Field Office; and *Hardeep K. Josan*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, New York, NY, on the comments for Defendant. Of counsel on the comments was *Tamari J. Lagvilava*, Senior Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection.

*Timothy C. Brightbill*, *Maureen E. Thorson*, *Stephanie M. Bell*, and *Stephen A. Morrison*, Wiley Rein LLP, Washington, DC, on the comments for Defendant-Intervenor.

    *Baker*, Judge: These consolidated cases involving U.S. Customs and Border Protection's determination that Plaintiffs evaded antidumping and countervailing duties by falsely describing plywood from China as a product of Cambodia return following remand. For the reasons explained below, the court sustains the agency's decision to stand by its finding of evasion.[1]

---

[1] In so doing, the court declines to redact certain information from the confidential record that the agency has

(footnote continues on next page)

I

A

The Enforce and Protect Act (EAPA), 19 U.S.C.
§ 1517, directs Customs to open an investigation after
receiving an allegation that "reasonably suggests" an
importer has "eva[ded]" an antidumping or counter-
vailing duty order. *See id.* § 1517(a)(3), (b)(1)–(2). The
statute defines "evasion" as the entry of covered goods
through any "material and false" statement, "or any
omission that is material," that reduces or avoids such
duties. *Id.* § 1517(a)(5)(A).[2]

---

disclosed or otherwise warrants unveiling given the "com-
mon law right of public access to court proceedings." *In re
Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir.
2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589,
597–99 (1978)).

[2] Evasion is to be distinguished from "circumvention," a
statutory first cousin that makes a cameo appearance later
in this opinion. Although both entail the same end—dodg-
ing antidumping and countervailing duties—they employ
different (and mutually exclusive) means. Evasion con-
cerns making false or misleading statements to Customs in
entering merchandise, typically regarding the country of
origin, one of the two elements of an antidumping or coun-
tervailing duty order's scope (the other being the product's
technical characteristics, *see Canadian Solar, Inc. v.
United States*, 918 F.3d 909, 917–18 (Fed. Cir. 2019)). Cir-
cumvention, on the other hand, involves the exporter's
completion or assembly of like goods in either the United
States or a third country using parts from a country subject

(footnote continues on next page)

Consol. Ct. No. 20-03914                    **Page 4**

It excepts from this definition material false statements or material omissions resulting from "clerical error." *Id*. § 1517(a)(5)(B)(i). This exception, in turn, contains its own exception for any clerical error that "is part of a pattern of negligent conduct." *Id*. § 1517(a)(5)(B)(ii).[3]

If Customs finds evasion, it must require the importer to post cash deposits and pay duties at the rate directed by the Department of Commerce. *Id*. § 1517(d)(1)(D).[4] The former agency may also take

---

to an antidumping or countervailing duty order. *See* 19 U.S.C. §§ 1677j(a)(1)(A)–(D), (b)(1)(A)–(E); *see also Canadian Solar Int'l Ltd. v. United States*, Cases 23-00222 and 23-00227, Slip Op. 25-59, at 2–6, 2025 WL 1420317, at **1–2 (CIT May 16, 2025) (explaining background legal principles in circumvention cases). By definition, "[c]ircumvention can only occur if the articles are from a country not covered by the relevant AD or CVD orders." *Bell Supply Co. v. United States*, 888 F.3d 1222, 1229 (Fed. Cir. 2018).

[3] And even a material false statement or material omission resulting from a clerical error that is *not* part of a pattern of negligent conduct does not "excuse that person from the payment of any duties applicable to the merchandise." *Id*. § 1517(a)(5)(B)(iv). It merely shields the importer from certain second-order effects resulting from an evasion determination. *See id.* § 1517(d)(1)(E).

[4] If Customs "is unable to determine whether the merchandise at issue is covered" by an order, it must refer that question to Commerce. *Id*. § 1517(b)(4)(A)(i). The latter, in turn, "shall" make such a determination and communicate the results to the former. *Id*. § 1517(b)(4)(B). The applicable

(footnote continues on next page)

"additional enforcement measures" as it "determines appropriate." 19 U.S.C. § 1517(d)(1)(E).

## B

In 2018, Commerce imposed antidumping and countervailing duties on plywood made in China. *See* 83 Fed. Reg. 504, 504–13; 83 Fed. Reg. 513, 513–16 (the orders). The following year, the Coalition for Fair Trade in Hardwood Plywood—a group of domestic producers—lodged an EAPA allegation with Customs. It alleged that certain importers, including Plaintiff InterGlobal Forest LLC, falsely identified entries of Chinese-made plywood as products of Cambodia.

After an investigation, the agency found that the importers' ostensibly "Cambodian-origin" plywood came from China. Appx01034. As relevant here, Customs concluded that InterGlobal's Cambodian supplier, LB Wood, "could not have produced" all the plywood it claimed to have made in that country. Appx01043. Thus, the latter company "commingled" locally made and "Chinese-origin" plywood, which it then exported to InterGlobal through entries "that evaded the payment of AD/CVD duties on plywood from China." *Id.* Customs's appellate division reaffirmed that conclusion on de novo review. *See* Appx01073.

---

regulation refers to this administrative lateral pass as a "covered merchandise referral." *See* 19 C.F.R. § 351.227.

The importers then filed these consolidated suits, and their Cambodian suppliers, including LB Wood, joined the fray as plaintiff-intervenors. The Coalition also intervened on the side of the government. After merits briefing, the court sustained Customs's determination. *See Am. Pac. Plywood, Inc. v. United States*, Consol. Case 20-03914, Slip Op. 23-93, 2023 WL 4288346 (CIT June 22, 2023) (*Am. Pac. Plywood I*). The importers and their suppliers appealed.

In the meantime, the court of appeals issued *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023). It held that Customs's refusal to allow importers accused of evasion to review and address "information on which the agency relied in reaching its decision" violated procedural due process. *Id.* at 1262. The government then sought, and the Federal Circuit granted, a voluntary remand in these cases because of that decision. *See* Nos. 23-2321, 23-2322, 2024 WL 302393, at *1 (Fed. Cir. Jan. 26, 2024). This court, in turn, remanded to Customs "for further proceedings consistent with *Royal Brush*." ECF 94, at 1.

On remand, Customs professed to allowing the importers "access to the business confidential information on which [it] relied." Appx45385. They were also able to submit rebuttal evidence and written arguments. *Id.* Only InterGlobal elected to do so. *See* Appx45382–45384. The agency then reaffirmed its finding of evasion. Appx45427. In doing so, it

incorporated its prior findings and provided more rea-
sons for its conclusion that LB Wood transshipped Chi-
nese-origin plywood to InterGlobal in the U.S. *See*
Appx45385–45427. The latter now challenges that re-
determination.

## II

The parties agree that the court should apply the
substantial-evidence standard of review, but that's not
correct, at least as a technical matter. "The statute re-
quires the court to determine whether Customs com-
plied with the *procedures* in [19 U.S.C.] § 1517(c) . . . ."
*Am. Pac. Plywood I*, Slip Op. 23-93, at 12–13, 2023 WL
4288346, at *4 (emphasis in original) (citing 19 U.S.C.
§ 1517(g)(2)(A)). As relevant here, those "procedures"
required the agency to make its redetermination
"based on substantial evidence." 19 U.S.C.
§ 1517(c)(1)(A). For purposes of § 1517(g)(2)(A), the
court's task is thus to consider whether the agency ap-
plied that standard in making its findings. The court
also assesses whether the redetermination "is arbi-
trary, capricious, an abuse of discretion, or otherwise
not in accordance with law." *Am. Pac. Plywood I*, Slip
Op. 23-93, at 12, 2023 WL 4288346, at *4 (quoting 19
U.S.C. § 1517(g)(2)(B) and citing 28 U.S.C. § 2640(e)).

That said, there is a longstanding "debate, which
has a how-many-angels-can-dance-on-the-head-of-a-
pin quality, . . . regarding whether" substantial-evi-
dence and arbitrariness review "actually differ mate-
rially in intensity." 33 Wright & Miller, *Federal*

*Practice and Procedure* § 8393 (2d ed. May 2025 update). On one side of this dispute is the perspective that the substantial-evidence standard "is . . . less deferential . . . than 'arbitrary, capricious.'" *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (citing *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 412–13 n.7 (1983)); *see also* Harry Edwards & Linda Elliott, *Federal Standards of Review* 279–80 (3d ed. 2018) ("The differences between arbitrary and capricious and substantial evidence review are not great, but they are more than semantic.").

"The alternative view, closely associated with Justice Scalia, is that it makes no sense to think of arbitrariness review as less strict than substantial evidence review." 33 Wright & Miller § 8403; *see also Caiola v. Carroll*, 851 F.2d 395, 398 (D.C. Cir. 1988) (stating that the distinction between substantial-evidence and arbitrary-and-capricious review is "largely semantic" because under both, the touchstone is rationality) (citing, *inter alia*, *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) (Scalia, J.) ("[I]t is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense . . . .") (ellipsis in *Caiola*)).

Although the court must follow *Gartside* as binding circuit precedent on this question, it confesses to agreeing with those "observers [who] insist that fine-grained disputes over the relative intensities of

supposedly different types of rationality review betray an unrealistic understanding of the real nature of judicial capacities." 33 Wright & Miller § 8403; *cf. United States v. Dominguez Benitez*, 542 U.S. 74, 86–87 (2004) (Scalia, J., concurring) (in the context of plain error review in criminal cases, stating that "ineffable gradations of probability seem to me quite beyond the ability of the judicial mind (or any mind) to grasp, and thus harmful rather than helpful to the consistency and rationality of judicial decisionmaking").

### III

### A

InterGlobal argues that Customs's redetermination was unlawful because it ignored the agency's previous acknowledgment that the orders only cover plywood containing "*at least three plies.*" ECF 107, at 4 (emphasis by the company and quoting the redetermination in *Far E. Am., Inc. v. United States*, Case 22-213, ECF 71, at 4 (itself quoting *Vietnam Finewood Co. v. United States*, 633 F. Supp. 3d 1243, 1262 (CIT 2023))). The company appears to contend that its imports contained fewer than three plies and thus were out-of-scope. But it cites no record evidence for this proposition. The court again reiterates that it does not "'hunt[] for truffles buried in briefs' or in administrative records." *Am. Pac. Plywood I*, Slip Op. 23-93, at 40, 2023 WL 4288346, at *13 (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)).

In any event, as the government argues, the company never raised this issue before the agency on remand when it had the opportunity to do so.[5] *See* ECF 113, at 13. The Coalition similarly observes that Inter-Global never asserted that it shipped goods of fewer than three plies. ECF 115, at 16 n.3 (citing Appx45223–45225). By failing to do so, InterGlobal waived this argument. "Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Deseado Int'l, Ltd. v. United States*, 600 F.3d 1377, 1380–81 (Fed. Cir. 2010) (quoting *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).

## B

InterGlobal next challenges Customs's reliance on its agent's visit to LB Wood's factory. ECF 107, at 5–8. The company mounts both legal and factual attacks on the agent's findings.

---

[5] *Vietnam Finewood* issued before the remand here. In *Far East*, Customs bowed to that decision on March 1, 2024. *See* Case 22-213, ECF 71. In this case, InterGlobal filed its written arguments and rebuttal evidence with the agency two months later, on April 30. *See* Appx45213–45265. And the following month, it filed comments on the agency's draft redetermination. *See* Appx45352–45371. The company thus had not one, but two opportunities on remand to flag the three-ply issue.

Consol. Ct. No. 20-03914                    Page 11

The legal argument is that a Commerce regulation reserves the power to determine whether a product is in-scope to the Department, "*not* [Customs] or its agents." *Id.* at 5–6 (emphasis in original) (citing 19 C.F.R. § 351.225). But EAPA punts this authority to Commerce only when Customs "is unable to determine whether the merchandise at issue is covered." 19 U.S.C. § 1517(b)(4)(A). Because Customs could make a scope determination here, Commerce simply had no role. *See also Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020) (en banc) ("Customs is both empowered and obligated to determine in the first instance whether goods are subject to existing antidumping or countervailing duty orders."); *Vanguard Trading Co. v. United States*, Case 23-00253, Slip Op. 25-61, at 18–22, 2025 WL 1503581, at **8–10 (CIT May 19, 2025) (rejecting an argument similar to InterGlobal's).

The factual attack concerns the agent's June 6, 2018, visit to LB Wood's Cambodian factory. InterGlobal has a litany of complaints: The inspection preceded the investigation's start by a year; there was no follow-up visit; the agency didn't describe her expertise; and the record lacks any declaration or any contemporaneous reports, records, or communications by the agent, save for eight photographs taken during that visit. ECF 107, at 5, 7.

These contentions, of course, were for the agency to weigh and respond to, which it did sufficiently to

satisfy arbitrariness review. It explained that the agent's site visit occurred during the period of investigation, which began on June 5, 2018. Appx01067.[6] Although the visit was for a different purpose, it "examined the same types of facts as relevant to this EAPA investigation." Appx01067. Customs pointed to documents related to that visit, *see* Appx45404 & n.178, which included contemporaneous photographs of LB Wood's factory and emails written by the agent just over a year later describing her findings based on those photographs, Appx07018–07038.[7] She "is a National Import Specialist for wood products" with "expertise" that allows her to "make authoritative pronouncements" regarding whether such goods are in-scope. Appx45396.[8]

---

[6] In announcing the investigation, the agency stated that it would cover entries made beginning one year before receipt of the evasion allegations—which occurred on June 5, 2019—through the pendency of the investigation. Appx01020–01021 (citing 19 C.F.R. § 165.2). The investigation ended on June 29, 2020, the date of the agency's evasion determination. Appx01034; Appx45381 n.46.

[7] Customs also pointed out that insofar as InterGlobal complained that the agent's email summarizing her findings came a year after her site visit, her recollection is more reliable than the declaration of Kurt Winn the company submitted, which came six years after his 2018 visits to LB Wood's factory. Appx45395.

[8] At the end of its brief, InterGlobal launches another factual attack by asserting that Customs "continues to

(footnote continues on next page)

## C

InterGlobal argues at length that evidence it submitted on remand—declarations and attached photographs from Kurt Winn, its chief operating officer, and from Fu Wenjie, the manager of LB Wood's Cambodian factory—rebutted the agency's finding that the latter company's facility could not produce the plywood imported by the former. ECF 107, at 9–23. Based on this exhaustive presentation, it contends that "the Court must find that there was no evasion" by the company. *Id*. at 20; *see also id*. at 17 (accusing Customs of "fail[ing] to properly weigh relevant production data").

The problem is that the court does not weigh evidence and make findings in this context. Instead, as discussed above, its limited role is to assess whether the agency applied the substantial-evidence standard

---

confuse the issues by belaboring the non-issues that (1) [the company] purchased Chinese plywood before the Orders were in effect, (2) [LB Wood] was founded in December 2017 and its general manager used to work for [another company], and (3) [LB Wood] operated out of the Sihanoukville Special Economic Zone." ECF 107, at 36. The company offers no record citations or argument to support its claim that these issues are irrelevant or that Customs "confuse[d] the issues." By failing to develop these points, the company has waived them. *Cf. Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party . . . presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived . . . .").

and otherwise refrained from arbitrariness in its deci-
sion making. *See also Am. Pac. Plywood I*, Slip Op.
23-93, at 29, 2023 WL 4288346, at *9 (explaining why
the court cannot re-weigh evidence in EAPA cases).

InterGlobal does not dispute that Customs applied
the substantial-evidence standard, as the latter said it
did. *See* Appx45401–45402. Nor does the company se-
riously contend that the agency overlooked or failed to
grapple with the Winn declaration and supporting
photographs. In fact, Customs carefully analyzed that
material and concluded that if anything, it supported
the finding of evasion. *See* Appx45385–45389;
Appx45419–45422; Appx45424–45425.[9] InterGlobal
doesn't point to anything arbitrary in that assessment.

The company does argue that Customs arbitrarily
"disregard[ed] the Wenjie Declaration outright."
ECF 107, at 23 (citing Appx45389). But that's not what
the agency did. It explained that the document "adds
no substantive value in that it [largely] restates infor-
mation already placed on the pre-remand administra-
tive record." Appx45389. While six paragraphs did not

---

[9] Customs dismissed one photograph attached to the Winn
declaration because there was "no assurance" it was "legit-
imate, given that the photograph was not provided during
the . . . EAPA investigation." Appx45425. InterGlobal com-
plains that "[t]his objection lacks merit" because the court's
remand order authorized rebuttal evidence. ECF 107, at 12
n.5. The agency, however, was not required to *credit* any
new evidence. Its task was to consider the new evidence,
weigh it, and provide a reasonable explanation—as it did.

cite to that record, the agency assigned them "no weight" because they provided "a subjective opinion" and did not offer "new substantive information warranting a reversal" of the evasion determination. Appx45389–45390. And Customs spelled out why "certain aspects" of the declaration "call[ed] its reliability into question." Appx45422–45423. This was reasoned decision making, not an agency run amok.

### D

InterGlobal complains that Customs relied on *Ikadan System USA, Inc. v. United States*, 639 F. Supp. 3d 1339 (CIT 2023), to find that "all that is required" for EAPA liability to attach is an importer's entry of covered merchandise "without declaring it as subject to AD/CVD orders . . . ." Appx45409. *See* ECF 107, at 24. The company contends that *Ikadan* misread the statute. It argues that the court should instead follow *Diamond Tools Technology LLC v. United States*, 609 F. Supp. 3d 1378 (CIT 2022) (*Diamond Tools II*), which it characterizes as holding that EAPA demands "a degree of culpability." ECF 107, at 26.

The court agrees with *Ikadan* that EAPA must be "read as a whole." 639 F. Supp. 3d at 1349; *cf.* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 168 (2012) ("[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view.") (quoting *Panama Refin. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting)). Such a reading

"supports [Customs's] strict liability interpretation of" the statute. *Ikadan*, 639 F. Supp. 3d at 1349.[10] That's because the statute's definition of evasion excludes material false statements or material omissions resulting from "clerical error." 19 U.S.C. § 1517(a)(5)(B)(i). This exception, in turn, contains its own exception for any clerical error that "is part of a pattern of negligent conduct." *Id.* § 1517(a)(5)(B)(ii).

Putting all this together, evasion is the entry of covered merchandise through *any* material false statement or material omission that avoids antidumping and countervailing duties, except those resulting from clerical errors. Even then, such errors constitute evasion if they are "part of a pattern of negligent conduct."

*Diamond Tools II* does not help InterGlobal overcome this reading. In that case, the court merely applied the truism that evasion requires (1) the entry of covered goods (2) through a material false statement or material omission (3) that avoids antidumping and/or countervailing duties. *See* 609 F. Supp. 3d at 1383 (outlining the statutory elements); *see also Diamond Tools Tech. LLC v. United States*, 545 F.

---

[10] Although *Ikadan* only held that Customs's reading was "reasonable" under the now-defunct *Chevron* doctrine, not that it was "the only possible interpretation or . . . the one [the] court [thought] best," *id.* (ellipsis in original) (quoting *Holder v. Martinez Gutierrez*, 566 U.S. 583, 591 (2012)), today the court holds that Customs's strict-liability interpretation *is* the best.

Supp. 3d 1324, 1347 (CIT 2021) (*Diamond Tools I*)
(same). The court twice held that Customs failed to ex-
plain how an importer made a material false state-
ment or material omission by denominating Thai-
made sawblades as not covered by an order applicable
to such goods produced in *China. See* 609 F. Supp. 3d
at 1385–91; 545 F. Supp. 3d at 1351–55.[11]

---

[11] In *Diamond Tools*, Customs could not determine in an
EAPA investigation whether sawblades made by joining
Chinese-made cores and segments in Thailand fell within
the scope of an antidumping order on Chinese sawblades
and therefore made a covered-merchandise referral to
Commerce. *See* 545 F. Supp. 3d at 1330. The latter, in turn,
collapsed the referral into a concurrent *circumvention* in-
vestigation of imports of such goods from Thailand, which
ultimately returned an affirmative finding. *Id*. This had
the effect of enlarging the scope of the original order that
was the subject of the referral, *see* 19 U.S.C. § 1677j(b)(1)
(authorizing the Department, upon a finding of circumven-
tion, to "include such imported merchandise within the
scope" of the applicable order), which until then was lim-
ited to sawblades created by the joinder of cores and seg-
ments *in China. See* 545 F. Supp. 3d at 1353–54. Based on
this circumvention finding, Commerce told Customs that
sawblades made by such joinder *in Thailand* were covered.
*See id*. at 1330. The latter agency applied that finding to
all of Diamond Tools's imports from Thailand, including
entries made *before* the Department opened its circumven-
tion investigation in December 2017. *See id*. at 1331.

  Over the importer's objections, *Diamond Tools I* upheld
Customs's determination that the order covered pre–De-
cember 2017 entries. *See id*. at 1347–51. It reasoned that

(footnote continues on next page)

InterGlobal claims it likewise reasonably relied on the orders' scope language, which according to *Vietnam Finewood* is limited to plywood with "at least three plies." 633 F. Supp. 3d at 1262. The company contends that because its imports contained at most two plies, they were out-of-scope. ECF 107, at 30–31.

---

under *Chevron* step one, EAPA does not speak directly to whether a circumvention determination's "temporal limitation" applies when Commerce uses that finding to respond to a covered-merchandise inquiry. *Id*. at 1349. Under *Chevron* step two, Customs's interpretation that EAPA permitted it to disregard that limit was reasonable. *See id*. at 1349–51.

The court doubts that in this post-*Chevron* jurisprudential world, Customs's covered-merchandise switcheroo in *Diamond Tools I* would withstand scrutiny. EAPA authorizes the agency to ask Commerce whether the product in question "*is* covered merchandise." 19 U.S.C. § 1517(b)(4)(A)(i) (emphasis added). "Covered merchandise," in turn, is defined as "merchandise that *is* subject to" an antidumping or countervailing duty order. *Id*. § 1517(a)(3) (emphasis added). Entries from an origin-country different from that specified in such an order are *not* "subject to" it, at least until the Department opens a circumvention investigation that ultimately expands the order's scope. This reading is further reinforced by the definition of evasion: "*entering* covered merchandise" through any material false statement or material omission that avoids duties. *Id*. § 1517(a)(5)(A) (emphasis added). Merchandise that is not covered or subject to a circumvention investigation *at the time of entry* does not evade antidumping or countervailing duties when an importer denominates it as not covered.

But as noted above, InterGlobal did not make this argument on remand when it had the opportunity. The court therefore declines to entertain it. *See Deseado*, 600 F.3d at 1380–81.

Finally, InterGlobal maintains that it took reasonable care to confirm that Cambodia, not China, was the country of origin of its plywood. ECF 107, at 27–29. The company contends that because it did so, it is immune from any evasion liability. *Id.* at 27. In so arguing, it relies on the Tariff Act's general provision requiring that importers "us[e] reasonable care" in making entries. *Id.* (quoting 19 U.S.C. § 1484(a)(1)).

This theory fails because an importer does not use reasonable care when it enters covered goods through a material false statement or material omission that avoids antidumping and/or countervailing duties. Such an entry necessarily stems—at a minimum—from negligence, because it departs from what a "reasonably prudent and careful" importer would do "under similar circumstances." Negligence, *Black's Law Dictionary* 930–31 (5th ed. 1979). The only negligence excused by the Tariff Act's evasion provisions is that resulting from a clerical error that itself is not part of a pattern of negligent conduct. *See* 19 U.S.C. § 1517(a)(5)(B).[12] The company does not contend that its designation of Cambodia as the country of origin—

---

[12] But as also explained above, even such a minor error doesn't excuse liability for the avoided duties. *See* 19 U.S.C. § 1517(a)(5)(B)(iv).

which the court assumes was false for purposes of this argument—resulted from a clerical error, so this narrowest of exceptions to strict liability offers it no sanctuary.

## E

InterGlobal observes that Customs opened its investigation after finding that "import/export trends in China, Cambodia, and the U.S. reasonably suggested that some Chinese exports of plywood pass through Cambodia by transshipment." ECF 107, at 32 (citing Appx01021–01022, Appx01025). The company then states that "while a 'reasonable suggestion' may be grounds to initiate an investigation [Customs] cannot rely on this contradictory data as substantial evidence of evasion." *Id.* It points to three sets of trade data that it characterizes as "conflicting" and faults the agency for "refus[ing] to reconcile" the discord. *Id.* at 32–33.[13]

The defect in this argument is that InterGlobal does not point to where Customs relied on these purportedly conflicting data sets to find evasion on the

---

[13] The first conflicting set involved Cambodian plywood exports to the U.S. in 2017, where the International Trade Commission's reported number greatly exceeded the United Nations Forestry Yearbook's. *Id.* at 33. The second was Chinese plywood exports to Cambodia in 2017, where the number provided by the Coalition from undisclosed sources exceeded the Commission's. *Id.* The third was Chinese plywood exports to the U.S. in 2018, where the Coalition's figure was similarly higher than the agency's. *Id.*

company's part, rather than for purposes of triggering its investigation. *See* Appx01025 (notice of initiation relying on trade data). The court's own review indicates that the agency's decision as to InterGlobal rested on extensive findings about LB Wood's activities in Cambodia rather than the trade data. *See* Appx01038–01043 (initial determination); Appx01065–01067, Appx01070–01071 (de novo agency appellate determination). The latter determination's summary as to InterGlobal enumerated five specific findings that supported the "conclusion that LB Wood supplied Chinese-origin plywood to InterGlobal . . . , which was falsely designated as made in Cambodia when imported into the United States." Appx01072. None of them relied on the trade data that InterGlobal challenges as inconsistent.[14]

On remand, Customs stated that the challenged trade data were "only a piece of the evidence that [the agency] considered." Appx45394. Even so, the court cannot discern any material reliance on that information at the evasion determination, versus the initiation, stage as it pertained to InterGlobal. Thus, insofar as Customs failed to address the purported

---

[14] In contrast, Customs's evasion findings for another importer, U.S. Global, *did* rely on trade data. *See* Appx01069 (stating that the trade data "buttressed" Customs's findings about that company's Cambodian supplier, Happy Home).

conflicts in trade data,[15] it made no difference to the company and thus was harmless error in light of the agency's extensive findings based on LB Wood's activities. *Cf. Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1363 (Fed. Cir. 2023) ("Commerce's finding . . . was supported by many findings other than its [erroneous] calculation of [the plaintiff's] value added.").

F

The court remanded so that Customs could provide "access to [previously withheld confidential] information *on which the agency relied* in reaching its decision." *Royal Brush*, 75 F.4th at 1262 (emphasis added). The redetermination explained that the company was allowed to see the full administrative record, which contained all "materials obtained and considered by [the agency] during the course of [the] investigation." Appx45315 (quoting 19 C.F.R. § 165.21(a)(1)).

InterGlobal now complains that it was denied such access and hypothesizes a laundry list of secret materials bearing on Customs's decision. *See* ECF 107, at 35–36. Even assuming the existence of this

---

[15] In any event, the agency did reconcile the incongruity in one of the three challenged data sets. It explained that the U.N. Forestry Yearbook data on Cambodian exports to the U.S. in 2017 were more reliable than the International Trade Commission's. *See* Appx01049 (initial determination); Appx01069 (appellate determination); Appx45394–45395 (redetermination).

supposed data trove, the company "makes no specific citations to where [the agency] *relied on* this information in its determination of evasion." *Royal Brush*, 75 F.4th at 1259 n.10 (emphasis added). InterGlobal having failed to make such a showing, and Customs having explained that it provided the company "with access to all of the information it relied upon in making its determination of evasion," Appx45415 n.248, the court finds that the agency complied with *Royal Brush*.

## IV

InterGlobal moves that the court take judicial notice of various documents outside the administrative record here but filed in two other CIT actions. *See* ECF 129.[16] In those cases, an importer challenged Customs's denial of protests contesting the agency's classification of plywood as a product of China (and thus subject to the orders) and alleged that it was instead manufactured in Cambodia by LB Wood. *See Richmond Int'l Forest Prods. LLC v. United States*, Case 21-178, ECF 5, ¶¶ 9–17 (*Richmond I*); *Richmond Int'l Forest Prods. LLC v. United States*, Consol. Case 21-318, ECF 13, ¶¶ 9–17 (*Richmond II*).[17] The entries

---

[16] The company also (unnecessarily) seeks to add a document that is already part of the record in this case to the remand appendix.

[17] Case 21-318 was consolidated with Cases 21-63 and 21-319, which involved materially identical allegations.

in both matters were made during the period of investigation in this case.[18]

In *Richmond I*, the government moved for a confessed judgment acknowledging that the plywood's country of origin was Cambodia, which the court granted on July 1, 2022. Case 21-178, ECF 22. In *Richmond II*, the parties settled in January 2025 through the entry of a stipulated judgment under which the government similarly agreed that Cambodia was the country of origin of all the entries in question. *See* Case 21-318, ECF 64. As a result of these filings, the government agreed to refund the antidumping and countervailing duties that the plaintiffs paid.

According to InterGlobal, the record here and the documents it requests the court judicially notice show that it and the *Richmond* importer bought the same type of plywood from LB Wood, which sometimes shipped to both of them on the same day. *See* ECF 124, at 3. Moreover, in *Richmond II*, Customs proffered the same evidence it relies on here: "the same photographs, the same memoranda, and the same report"

---

[18] *See* Case 21-178, ECF 5, ¶ 13 (entry made in February 2019); Case 21-318, ECF 13, ¶ 13 (entries made during December 2018–February 2019); Case 21-63, ECF 10, ¶ 13 (entries made during August–September 2018); Case 21-319, ECF 10, ¶ 13 (entries made during February–November 2019). The period of investigation here was June 5, 2018, to June 29, 2020. *See* note 6.

from the agent's June 2018 visit. *Id.* at 4 (citing Case 21-318, ECF 36-2, at 12–13).

Based on these facts, InterGlobal contends that the agency is judicially estopped from contradicting its concession in the *Richmond* cases that the plywood exported by LB Wood was of Cambodian origin and thus not subject to the orders. *Id.* at 5–7 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). The former company argues that to allow Customs to assert the contrary position here would impose an "unjustified and unfair detriment" on InterGlobal. *Id.* at 6–7.

The government responds that the court cannot consider matters outside the agency record. ECF 132, at 2–9. Relatedly, it argues that judicial notice does not apply when the court undertakes record review, *id.* at 12–14, and that in any event the documents submitted by InterGlobal do not satisfy the applicable test under Federal Rule of Evidence 201, *id.* at 14–16. Finally, it contends that judicial estoppel does not apply here because its concessions in the *Richmond* cases applied to different entries. *Id.* at 10–11.

The court need not consider the government's procedural objections because it is not persuaded that the amorphous doctrine of judicial estoppel[19] applies here.

---

[19] Wright and Miller characterize this so-called doctrine as "confused," observing that it is better understood "as a set of doctrines that have not matured into fully coherent

(footnote continues on next page)

Three non-exclusive factors inform "whether a party's inconsistent legal positions constitute judicial estoppel." *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010). They are (1) whether the party's later position is "clearly inconsistent" with its prior one; (2) whether it has "succeeded in persuading a court" to accept its earlier position; and (3) whether its assertion of an inconsistent position would give it an unfair advantage over the opposing party absent estoppel. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. at 750–51).

Judicial estoppel does not fit here because Customs did not "succeed" in persuading the court of anything in the *Richmond* actions. Rather, the agency gave up and confessed error, either directly or by stipulated judgment. As the First Circuit has explained, the doctrine is concerned with whether "intentional self-contradiction is being used as a means of obtaining unfair advantage," which in turn "generally requires that a party have succeeded previously with a position directly inconsistent with the one it currently espouses."

---

theory." 18B *Federal Practice and Procedure* § 4477 (3d ed. May 2025 update). As a result, its application is "ad hoc . . . in each case." *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1579 (Fed. Cir. 1984) (cleaned up); *cf. Am. Jewish Cong. v. City of Chicago*, 827 F.2d 120, 129 (7th Cir. 1987) (Easterbrook, J., dissenting) ("When everything matters, when nothing is dispositive, when we must juggle incommensurable factors, a judge can do little but announce his gestalt.").

*Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 (1st Cir. 1999) (cleaned up). The agency's "position" in the *Richmond* litigation was plainly consistent with the one it asserts here—that LB Wood did not manufacture all the plywood it exported to the U.S.—but it then ran up the white flag. It hardly "succeeded" in advancing a position "directly inconsistent" with its theory here. Just as wars are not won by surrendering, lawsuits are not won by confessing error.

The court therefore denies InterGlobal's motion for judicial notice without prejudice as unnecessary to resolve. Even if the court can take notice of the proffered documents from the *Richmond* litigation, a party cannot be judicially estopped solely because of its capitulation to a position that it opposed (and still opposes).[20] To hold otherwise would discourage parties from ever settling or confessing error. But "[f]ew public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute." *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986) (citations omitted). Settlements and confessions of error "produce a substantial savings in judicial resources and

---

[20] The court acknowledges that in *New Hampshire v. Maine*, the Supreme Court held that judicial estoppel precluded the former state from advancing a position inconsistent with an earlier consent decree provision that it "benefited from." 532 U.S. at 752, 755. InterGlobal points to no benefit that Customs obtained by its unconditional surrender in the *Richmond* cases.

**Consol. Ct. No. 20-03914**                              **Page 28**

thus aid in controlling backlog in the courts." *Id.* at 1060 n.5. They also "promote efficient use of private resources by reducing litigation and related costs." *Id.* At least as far as judicial estoppel is concerned, litigants that settle or confess error should be permitted to live and fight another day absent any showing of some unfair advantage thereby obtained.

\*    \*    \*

Customs followed the relevant procedures, and no part of its redetermination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The court therefore sustains the agency's redetermination (ECF 98). It also denies the company's motion for judicial notice (ECF 124) without prejudice. A separate judgment will issue. *See* USCIT R. 58(a).

Dated:  July 9, 2025              /s/ *M. Miller Baker*
        New York, NY             Judge